**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP, MALLINCKRODT INC. and LIEBEL-FLARSHEIM COMPANY<br><br>                                    Plaintiffs,<br><br>vs.<br><br>E-Z-EM, INC. and ACIST MEDICAL SYSTEMS, INC.<br><br>                                    Defendants. | Civil Action No. 07 CV 262 (TJW) |

**E-Z-EM, INC. AND ACIST MEDICAL SYSTEMS, INC.'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFFS**

**INTRODUCTION**

Defendants E-Z-EM, Inc. and ACIST Medical Systems, Inc. (collectively "E-Z-EM" or "Defendants"), hereby move the Court pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Plaintiffs Liebel-Flarsheim Company and Mallinckrodt Inc. (collectively "LF" or "Plaintiffs") to produce non-privileged documents relevant to the enforceability and validity of U.S. Patent No. 5,868,710 (the "'710 patent" or the "patent-in-suit") that LF and its counsel have failed to produce.

Despite the parties' counsel having conferred on several occasions, and LF's counsel agreeing to supplement its production, LF continues to not comply with this Court's Discovery and Docket Control Orders and continues to fail to fully satisfy its discovery obligations. By November 7, 2008, the parties were scheduled to have produced a copy of all documents, electronically stored information, and tangible things in the possession, custody or control of the party. The production was to include everything relevant to the pleaded claims or defenses

involved in this action, other than those documents relating to the computation of damages.  LF has failed to do so.

In this motion, E-Z-EM focuses specifically on discovery requests that it propounded in July 2008 directed to LF and its long-standing patent and litigation counsel, Wood Herron and Evans LLP ("Wood Herron").  E-Z-EM respectfully requests that the Court order LF and its counsel to immediately produce the requested documents and promptly comply with all discovery obligations.

## FACTS

On February 8, 2008, E-Z-EM sent a letter to LF's counsel explicitly identifying the information and documents E-Z-EM expected LF to produce pursuant to Local Patent Rules 2-5 and 3-2, and the Court's Discovery Order.  (February 8, 2008 letter to Brian Arnold, Exhibit A.)  Shortly thereafter, LF provided E-Z-EM with a similar list of requested documents.

Parties' counsel subsequently conferred on May 8, 2008 and mutually agreed to the dates set forth in the Discovery Order and the Docket Control Order entered by the Court on June 20, and June 26, 2008.  November 7, 2008 was the date set by the Court for all remaining documents and things other than those relating to computation of damages to be produced.  (Discovery Order and Docket Control Order, Exhibits B and C.)  Though LF did produce some documents on November 7, 2008, and has subsequently supplemented their production on a piecemeal basis, LF's production remains largely incomplete.

In addition to E-Z-EM's detailed letter of February 8, 2008, E-Z-EM, because of the need to be assured that LF would be gathering all relevant files, served LF's long-time prosecution and litigation counsel, Wood Herron, with a subpoena on July 3, 2008 (the "Wood Herron Subpoena").  (Wood Herron Subpoena, Exhibit D.)  The Wood Herron Subpoena explicitly

identified and requested various non-privileged documents, including a number of LF's domestic and foreign patent prosecution files and prior art files, as well as litigation-related documents associated with prior patent suits LF had litigated (in which Wood Herron was litigation counsel for LF) involving medical power injectors and technology related to the subject matter of this suit. All of these files have been and are under LF's control, in Wood Herron's possession, and are clearly relevant to Defendants' defenses.

The Wood Herron Subpoena requested that documents be produced by July 25, 2008. Weeks after the July 25, 2008 date had passed, E-Z-EM still had not received production, **nor any objections** to the subpoena. Only after several letters and emails from E-Z-EM's counsel did E-Z-EM finally receive, nearly a month later, on August 21, 2008, a limited document production. This production, however, altogether failed to respond to a number of Defendants' document requests.

Over the next month, Defendants wrote several additional letters detailing the deficiencies in the productions, but to no avail.[1] Counsel for the parties participated in a meet and confer on October 8, 2008.[2] At the October 8 meet and confer, LF committed to producing the missing responsive documents by October 10, 2008; however LF did not do so. (*See* October 13, 2008 Letter to Brian Arnold memorializing LF's commitments, Exhibit G.)

Finally, on October 31, 2008 LF did produce some additional relevant documents. However, it again became evident that a substantial number of relevant documents were still

---

[1] *See* October 1, 2008 letter to Brian Arnold (Exhibit E) for a more detailed description of E-Z-EM's attempts to secure this discovery.

[2] Originally, Robert Chambers of Wood Herron handled the response to the July 3, 2008 Subpoena. However, on September 30, 2008, LF's counsel in this case, Kirkland & Ellis, informed E-Z-EM that they would be taking over and would be participating in the meet and confer regarding the documents E-Z-EM requested in its subpoena to Wood Herron. (*See* September 30, 2008 email from Brian Arnold, Exhibit F.)

being withheld. E-Z-EM again requested these documents, and held another meet and confer on December 9, 2008.[3]

At the December 9 meet and confer, LF's counsel again committed to supplementing its production this time by January 14, 2009. (*See* December 12, 2008 letter to Brian Arnold, Exhibit J.) LF on January 6 and January 16, 2009 produced a few documents; again however, the production was incomplete. LF's continued withholding of relevant documents is prejudicing Defendants.

## LEGAL STANDARD

Should a party fail to produce documents under Rule 34, the court may compel production of the requested discovery. *See* Fed. R. Civ. P. 37(a)(2)(b); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). The party moving to compel must demonstrate that the request is relevant, *i.e.*, calculated to lead to admissible evidence, although the requested material need not itself be admissible at trial. *Briones v. Smith Dairy Queens, Ltd.*, No. V-08-48, 2008 WL 4630485, at *1 (S.D. Tex. Oct. 16, 2008). Once relevancy is established, the non-moving party then bears the burden of establishing that discovery should not be allowed. *Id*.

If the Court determines that the non-moving party has refused to respond to proper discovery requests, the Court may award sanctions to the moving party. *See* Fed. R. Civ. P. 37(a)(4)(A); *see also Laserdynamics, Inc. v. ASUS Computer Int'l.*, No. 2:06-CV-348, 2009 WL 153161, at **4-6 (E.D. Tex. Jan. 21, 2009) (ordering production of documents and sanctioning the party that failed to produce by taking away one peremptory challenge and reducing by half the party's time for voir dire, opening statements, and closing argument).

---

[3] November 24, 2008 and December 4, 2008 letters to Brian Arnold, Exhibits H and I, respectively.

**ARGUMENT**

LF continues to systematically withhold relevant documents to E-Z-EM's prejudice. E-Z-EM's ability to conduct efficient and complete discovery is being improperly hampered and delayed. The Court is respectfully requested to order LF to immediately produce all responsive documents, including, at least those covered by the Requests addressed below, that E-Z-EM has repeatedly demanded and about which they have conferred with LF's counsel.

### 1. Document Requests Nos. 35 and 36 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 13 of Document Requests)

Document Requests Nos. 35 and 36 in the Wood Herron Subpoena call for the production of all deposition transcripts, trial transcripts and exhibits associated with the *Liebel-Flarsheim Co. v. Medrad* (Civil Action No. C-1-98-858 in the U.S. District Court for the Southern District of Ohio), and *Medrad, Inc. v. Liebel-Flarsheim Co., Mallinckrodt Inc., and Coeur Laboratories Inc.* (C-1-99-583 in the U.S. District Court for the Southern District of Ohio) litigations (the "LF Litigations"). These prior litigations were patent and antitrust suits between LF and Medrad, the dominant market leader in the medical injector field, on injector-related patents that cover similar and related power injector technology as the patent-in-suit. The transcripts requested (and the exhibits thereto) include testimony of a number of the **same inventors as the inventors of the patent-in-suit**, as well as experts, and other witnesses who are expected to testify in this action. All transcripts, exhibits, declarations, and submissions by the inventors of the patent-in-suit, as well as all reports, affidavits, and exhibits of LF's and Medrad's technical and patent experts must be produced. LF's production omits many of these documents. The requested documents are relevant to prior art, to the state of the art, to the knowledge of those skilled in the art at the time of the invention of the patent-in-suit, to claim construction issues in this action, and to inventorship.

LF's production has been well-culled and selective. For example, only portions of the deposition transcripts and exhibits of some of the named inventors of the patent-in-suit were produced. Indeed, a number of the inventors' past depositions have not been produced at all, including, for example, the depositions of inventors James Goethel and Charles Neer. In addition to narrowing their production of the inventor's past testimony, LF is withholding substantial portions of the transcripts of the depositions of other LF engineers and executives including at least Frank Fago, Thomas Dunham, Carol Lynn Farrell, and James C. Carlile. LF also only produced excerpts of the testimony of Vance W. Huggins and John Campbell, but excluded portions of the witnesses' testimony as the subject matter turned to E-Z-EM. The Huggins deposition transcript contains questions regarding E-Z-EM and LF as competitors to Medrad. Huggins is asked "What did the sales rep tell you about E-Z-Em (sic) in this time frame?" The pages following this question were not produced. The Campbell deposition transcript includes the following question to Campbell: "And was a listing of the placement of LF/EZEM/Medrad injectors provided to Bracco representatives?" The pages immediately preceding this question were not produced. These withheld pages are clearly relevant to the claims of this action.

Finally, LF has only provided E-Z-EM with selected excerpts of the deposition of LF employee Jerome Kuemmel. The withholding of Mr. Kuemmel's complete deposition transcript has already prejudiced Defendants. Mr. Kuemmel was designated in this action as LF's 30(b)(6) witness with respect to LF's licensing of the patent-in-suit, an issue that directly bears on Mallinckrodt's standing to sue (Mallinckrodt contends that it is an implied exclusive licensee of the patent-in-suit). Because of this, and other withheld documents, Defendants were unable to

complete the deposition that began on December 13, 2008.[4]  Plaintiffs have not objected to production of these requested documents, indeed, they would have no grounds to object.

LF has also omitted from its production a number of expert reports and expert testimony from the LF Litigations, all of which E-Z-EM previously requested.  Again, LF was selective in its production.  For example, LF produced a report from LF's expert Dr. Guenther in response to Medrad's infringement expert report of Dr. R. Sturges, but failed to produce Dr. Sturges initial expert report.[5]

Further, LF has failed to produce certain documents relating to the inventorship and development of a prior art LF injector – the CT 9000.  For example, documents authored by Mr. Larry Kelly relevant to the CT 9000 and/or other LF injectors, as well as documents he was shown in preparation for his deposition during the LF Litigations have been withheld.  Mr. Kelly was a former independent contractor for LF.

The prior testimony of the inventors of the patent-in-suit, and the prior arguments and positions taken by LF and its experts, as well as, their submissions in prior suits relating to similar injector technology are clearly relevant and must be produced.  The information and documents sought go to a number of E-Z-EM's defenses, including non-infringement, double patenting, anticipation, and obviousness, and are relevant to Plaintiffs' theory of damages.

---

[4] These additional documents that were requested, but have not yet been produced, include for example: all agreements between Nemoto Kyorindo, Siemens, Philips Medical Systems, GE Medical Systems and Mallinckrodt Inc. and/or Liebel-Flarsheim Company, including all prior license agreements, drafts, executed versions, and amendments, as well as attached exhibits.  Also Defendants requested the agreements reflecting the terms of the acquisition of Liebel-Flarsheim by Mallinckrodt Inc. and subsequent acquisition by Covidien Ltd.

[5] Plaintiffs also have failed to produce documents prepared by or concerning the damage experts in the LF Litigations, including LF's damage expert Glen Newman and Medrad's damage expert Mark Gleason.

### 2.     Document Requests Nos. 2, 35 and 36 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 13 of Document Requests)

Document Requests Nos. 2, 35 and 36 in the Wood Herron Subpoena call for agreements concerning the '710 patent and specifically the production of documents relating to prior art and state of the art injector(s) manufactured, sold or offered for sale by foreign injector manufacturer Nemoto Kyorindo Co. Ltd. ("Nemoto") to LF.  LF's dealings with Nemoto as they relate to LF's distribution of the Nemoto SONIC SHOT power injector in the United States is of relevance to this suit.  Such dealings, and the documents associated with the dealings, are relevant to issues concerning prior art, state of the art, validity of the patent-in-suit, and may bear on co-plaintiff Mallinckrodt's standing to sue in this action.

After repeated requests, LF produced on January 16, 2009, a limited number of documents and information concerning the Nemoto SONIC SHOT injector.  However, once again, the production was incomplete with relevant documents missing including any drafts of agreements between LF and Nemoto, and missing correspondence between LF and Nemoto concerning the license agreement and purchase of Nemoto's injectors.

Additionally, Document Request No. 2 of the Wood Herron Subpoena calls for, and Defendants have repeatedly asked for, all documents relating to agreements entered into between LF and Original Equipment Manufacturers ("OEM") for the sale and distribution of LF injectors. LF has once again failed to produce such documents.  For example, LF produced only selected drafts of LF's OEM agreements with Siemens AG, Philips Medical Systems B.V., and General Electric Company.  Such documents are directly relevant to the question of whether Plaintiff Mallinckrodt Inc. has standing to sue in this litigation.  LF continues to withhold all correspondence related to the negotiations of the agreements, the terms of these agreements, the parties to the agreements, the drafts, and all final versions.  Such documents were requested

specifically during the 30(b)(6) deposition of LF on December 13, 2008. Further, although Plaintiffs produced documents evidencing the existence of an OEM agreement between LF and Toshiba as early as August 2003, none of the drafts nor the final version of such an agreement has been produced.

LF's failure to produce the drafts and final versions of these agreements is prejudicing Defendants, impeding Defendants' ability to question LF's 30(b)(6) witness, Mr. Kuemmel, whose deposition commenced on December 13, 2008, and could not be completed, and may bear on Mallinckrodt's standing as a co-plaintiff in this suit.

### 3. Documents Responsive to E-Z-EM's Document Request No. 32 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 12 of Document Requests)

Document Request No. 32 in the Wood Herron Subpoena calls for the production of documents and things relating to E-Z EM and its injectors. Such documents are clearly relevant to this case as they involve the Defendants and the injectors which are accused of infringement by LF, as well as, E-Z-EM's prior art PercuPump II injector that E-Z-EM made, used and sold beginning in 1994/1995, more than a year prior to the filing of the patent-in-suit.

While LF has produced some documents relating to E-Z-EM's injectors and LF's analysis of these injectors, this production is clearly deficient. For example, LF produced documents that relate to E-Z-EM's injectors that bear Bates numbers from the LF Litigations, but the gaps in Bates number sequences show that only a selective set of documents have been produced to Defendants.[6] Additionally, LF has produced **no** documents relating to known past discussions of possible business collaboration between LF and E-Z-EM. Further, while LF produced an internal memo prepared during the development of one of its injectors stating that

---

[6] For example, a page titled "Competitive Comparison of Operating Characteristics" that compares LF's CT 9000, Medrad's MCT Plus, and E-Z-EM's PercuPump has the number "3-1" at the bottom of it, clearly indicating that it is part of a larger document, was produced with no other pages. Further, multiple faxes concerning E-Z-EM that have been produced are missing pages and in some cases the vast majority of the document is missing.

comparisons to E-Z-EM's prior art PercuPump II injector will be made, no further documents related to this comparison have been produced. Additionally, few internal documents (e-mails and other electronic files) concerning LF's own injectors including LF's requests for approval from the U.S. Food and Drug Administration to market a new medical device in the U.S. (*e.g.,* a "510K") have been produced. Commonly in a 510K filing, the applicant will refer to comparable devices marketed by competitors. LF's production does not contain such documents.

    **4. Document Request No. 11 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 8 of Document Requests)**

Document Request No. 11 in the Wood Herron Subpoena calls for the production of documents and things referring or relating to the declarations of James H. Goethel, Dwayne Crawford and Kenneth J. Niehoff, which were referenced on the face of U.S. Patent No. 5,662,612, a prior art reference. These declarations discuss issues such as the development of LF's prior art Angiomat 6000 injector (an injector identified by LF as prior art during prosecution of the patent-in-suit) and control of the motor of an injector in an injection procedure – subject matter of the patent-in-suit. Thus, these declarations are clearly relevant as they go to prior art, to the state of the art, to the knowledge of those skilled in the art at the time of the alleged invention of the '710 patent, and to claim construction issues in this action. Although LF finally produced the declarations themselves in January 2009, LF has failed to produce any documents referring or relating to the declarations including, for example, any communication concerning the declarations or any prior drafts of the declarations.

    **5. Document Requests Nos. 33, 35, and 36 from the July 3, 2008 Subpoena (*See* Exhibit D at pp. 13 and 14 of Document Requests)**

Document Requests Nos. 33, 35 and 36 in the Wood Herron Subpoena call for the production of documents relating to the prior art Medrad Mark IV and V power injectors dated

prior to the filing of the '710 patent. These injectors directly competed with LF injectors during the relevant time period, and have often been identified by LF in its patents as material prior art. Indeed, these Medrad injectors were identified by LF in the prosecution of the '710 patent, and therefore clearly go to prior art, to the state of the art, to the knowledge of those skilled in the art at the time of the invention of the patent-in-suit, and to claim construction issues in this action.

While LF's January 16, 2009 production included some publicly available user manuals relating to the Medrad injectors, given the extent of the competition between Medrad and LF in the injector field and the years of litigation between the companies, that LF and its counsel have only produced such publicly available documents is incredible. LF's production must be supplemented.

### 6. Document Request No. 27 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 11 of Document Requests)

Document Request No. 27 in the Wood Herron Subpoena calls for the production of all documents relating to U.S. Patent No. 5,300,031 (the "'031 patent") and any divisional, continuation and continuation-in-part application(s) thereof; U.S. Patent Application Ser. No. 494,795 including Microfiche Appendix referenced therein and any divisional, continuation and continuation-in-part application(s) thereof; and U.S. Patent No. 4,695,271. These patents, each of which issued more than a year **before** the application that matured into the '710 patent was filed, are assigned to LF and are directed to injectors similar to those covered in the '710 patent. These documents are prior art, and evidence the state of the injector design art at times relevant to validity and claim construction issues in this action and should be produced.

Also, within the scope of this request is U.S. Patent No. 5,456,669 (the "'669 patent") which is a division of the '031 patent. Wood Herron represented LF when LF asserted the '669 patent against Medrad, Inc. in one of the previous LF Litigations. Consequently, documents

relating to the litigation concerning the '669 patent in LF's possession, custody or control must also be produced. For example, LF produced expert reports by experts retained by Medrad that address the '031 patent, but LF did **not** produce a rebuttal report from its own expert or any other documents that address the patent.

U.S. Patent Application Ser. No. 494,795 matured into U.S. Patent No. 5,662,612. Because this patent is a continuation of U.S. Patent Application No. 08/157,823 filed November 24, 1993, it is prior art, and evidences the state of the injector design art at times relevant to validity and claim construction issues in this action. Each of these applications was prosecuted on behalf of LF by Wood Heron. In particular, this patent relates, among other things, to at least claim construction and validity issues that will be addressed in this litigation. Nonetheless, LF once again is withholding documents related to this patent and patent application.

Further, documents and information related to U.S. Patent No. 4,695,271 to Goethel, **who is named as an inventor of the '710 patent, and claims a power injector also covered by the '710 patent** with a mercury switch tilt sensor to sense the vertical position of the powerhead, have also been withheld. Wood Heron prosecuted **both** the Goethel and the '710 patents for LF. Certainly, Plaintiffs have more in their possession than a copy of the patent that they produced.

    **7.**    **Document Request No. 9 from the July 3, 2008 Subpoena (See Exhibit D at p. 7 of Document Requests)**

Document Request No. 9 to the Wood Herron Subpoena calls for the production of all documents and things relating to the prosecution of any foreign patent application in the '710 Extended patent family (a defined term in the Wood Herron Subpoena). Such records clearly go to prior art, to the state of the art, to the knowledge of those skilled in the art at the time of the invention of the patent-in-suit, and to claim construction issues in this action.

LF produced a limited number of documents related to its European Patent Application that is part of the '710 Extended patent family. However, LF's production excludes certain important correspondence relating to this patent application. For example, the claims presented in the May 21, 1999 European Patent Application that is part of the '710 Extended patent family differ from the claims originally filed in the European Patent Application on September 25, 1998 (Claims 1 to 11 now, as opposed to Claims 21 to 30 in the application as filed, appear to correspond to the subject matter of the claims of the '710 patent). However, no correspondence was produced between Wood Heron and its European associate related to this change in the claims, nor copies of any issued European patents produced.

    **8.**    **Documents Responsive to E-Z-EM's Document Request No. 29 from the July 3, 2008 Subpoena (*See* Exhibit D at p. 12 of Document Requests)**

Document Request No. 29 in the Wood Herron Subpoena calls for the production of all documents relating to applications for design patents and trademark applications relating to any injectors filed prior to the issuance of the '710 patent. This request encompasses, but is not limited to, U.S. Patent No. Des 392,388 and U.S. Patent No. Des. 391,638. These design patents are assigned to LF and are directed to injectors similar to those covered by the patent-in-suit. Indeed, some of the LF Angiomat Illumena injectors – the injectors LF has stated are covered by the '710 patent – are marked with the Des. 392,388 patent number. These documents clearly go

to prior art, to the state of the art, to the knowledge of those skilled in the art at the time of the invention of the patent-in-suit, and to claim construction issues in this action.

Additionally, this request encompasses LF's trademark applications, such as that for LF's Angiomat Illumena mark. Among other things, trademark applications include an allegation of when the mark was first used commercially in the United States. Such information is related to a possible first sale prior art. LF has failed to produce any documents relating to these design patents or trademarks. Since this intellectual property was either assigned to, or owned by LF, and at least some of which was prosecuted by Wood Herron, LF clearly has these documents in its control. The relevance of the requested documents has not been contested and therefore they must be produced.

## CONCLUSION

LF's piecemeal and selective production has been contrary to the Court's orders and materially prejudices Defendants. LF commenced this patent infringement action against E-Z-EM a year and a half ago and has still failed to fully produce responsive documents as required by the Federal and Local Rules. Because LF has failed to produce and continues to fail to produce relevant information, Defendants have been unable to advance discovery, and have lost three months of discovery.

Based on the foregoing, it is clear that the scope of LF's document gathering has not been adequate and, therefore, LF should be compelled to immediately conduct a proper search of the electronic and paper files of its facilities, employees and agents that were, or currently are, involved with the injectors LF claims are covered by the patent-in-suit, or may be prior art to that patent.

For the foregoing reasons, E-Z-EM respectfully requests that the Court enter an order: (1) compelling LF to provide a full and complete production, including but not limited to the

Wood Herron documents addressed specifically in this motion, pursuant to the Federal Rules of Civil Procedure and Local Patent Rules 2-5 and 3-2; (2) compelling LF to conduct a reasonable investigation in to and gathering of responsive and relevant documents and things, including electronic documents; (3) for sanctions in an amount to compensate E-Z-EM for the attorneys' fees and cost incurred in connection with this motion; and (4) at least an extension to the close of discovery from April 19, 2010 to May 30, 2010.

Dated this 5th day of February, 2009.  By: /s/ Deron R. Dacus
Tracy Crawford
State Bar No. 05024000
Deron R. Dacus
State Bar No. 00790553
RAMEY & FLOCK, P.C.
100 East Ferguson, Suite 500
Tyler, Texas  75702
(903) 597-3301
(903) 597-2413 (fax)
Email: tracyc@rameyflock.com
Email: ddacus@rameyflock.com

Philippe Bennett
David Eklund
ALSTON & BIRD LLP
90 Park Avenue
New York, NY  10016-1387
(212) 210-9400
(212) 210 9444 (fax)
Email: philippe.bennett@alston.com
Email: david.eklund@alston.com
*Attorneys for Defendants E-Z-EM, Inc. and ACIST Medical Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 5th day of February, 2009.

            */s/ Deron R. Dacus*_____
            Deron R. Dacus

## CERTIFICATE OF CONFERENCE

Defendants' counsel has conferred with Plaintiffs' counsel regarding the relief requested herein pursuant to Local Rule CV-7(h). This motion is opposed.

Defendants' lead trial counsel, Philippe Bennett, and Defendants' local counsel, Deron Dacus, met and conferred with Plaintiffs' lead trial counsel, Brian Arnold, and Plaintiffs' local counsel Melissa Smith, on October 8, 2009 and on December 9, 2009. During both of these conferences, the parties discussed Plaintiffs' failure to fully satisfy its discovery obligations, specifically those documents in the control of Plaintiffs and in the custody of Wood Herron and Evans LLP, Plaintiffs longstanding patent prosecution and litigation counsel. Although Plaintiffs acknowledged their production was incomplete, and in fact promised to produce the responsive documents they were withholding, they have failed to do so. Defendants have been requesting this discovery for months. Despite Plaintiffs' promises, Defendants have still have not received the requested documents. Defendants seek relief from the Court as Plaintiffs continue to fail to produce the requested discovery.

            */s/ Philippe Bennett*_____
            Philippe Bennett, lead trial counsel for Defendants E-Z-EM, Inc. and ACIST Medical Systems, Inc.

            */s/ Deron R. Dacus*_____
            Deron R. Dacus, local counsel for Defendants E-Z-EM, Inc. and ACIST Medical Systems, Inc.